**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Arturo Contreras Soto,

Defendant.

No. CR-24-02929-001-TUC-JGZ (JR)

**REPORT AND RECOMMENDATION**

This matter was referred to Magistrate Judge Rateau for pretrial matters. On August 20, 2024, Defendant filed a Motion to Suppress Evidence Illegally Seized. (Doc. 25.) On September 6, 2024, the Government filed the Government's Response to Defendant's Motion to Suppress. (Doc. 31.) Defendant did not reply. An evidentiary hearing was conducted on September 13, 2024. (Doc. 32.) Defendant was present and represented by counsel. The Government presented one witness, Tucson Police Department (TPD) Officer Still. Four Government exhibits were admitted without objection. The defense did not call any witnesses or present any exhibits.[1] Having considered the matter, the Magistrate Judge

[1] This Court did not request that a transcript of the hearing be prepared.

recommends that the Defendant's motion be **DENIED**.[2]

## I. Background

### Facts

In recent months leading up to April 3, 2024, police had seen a high rate of violence and drug-related crimes in a particular area of Tucson. TPD Detective Demasi and TPD Officers Still and Rodriguez were part of the Community Response Team (CRT) conducting surveillance in the area. Specifically on April 3, 2024, Detective Demasi was conducting surveillance in an unmarked police vehicle near a residence police believe to be occupied by a fugitive.

Defendant Arturo Contreras Soto (Defendant) had previously been seen by police in that area. The day before, on April 2, 2024, CRT officers saw the Defendant riding an electric bicycle while carrying an open container of alcohol which is a Class 2 misdemeanor in Arizona. Officers stopped him, gave him a warning, and released him. Collectively, the CRT determined that if Defendant Contreras was again seen committing such an infraction, he would be arrested, charged with the misdemeanor offense, and taken to jail.

The very next day, April 3, 2024, officers again saw the Defendant leaving the area. He was riding an electric bicycle and failed to stop at a stop sign. He was again carrying an open container of alcohol. TPD Officer Still, who was travelling in a marked police car, stopped the Defendant based on the observed offenses. TPD Officer Rodriguez also

[2] Trial is set for December 3, 2024, and the plea deadline is November 15, 2024. (Doc. 30.)

assisted as did many other TPD officers. Some were in police uniform and some in plain clothes; some were in their police vehicles and some in unmarked cars.

Upon approaching the Defendant, Officer Stills handcuffed him with his hands behind his back. The Defendant was allowed to remain on his bicycle. He was wearing a satchel across his chest. Based on his training and experience, Officer Still knew that a satchel like the one the Defendant was wearing was often used to transport weapons and drugs. For officer safety, Officer Stills removed the satchel and placed it 12 to 15 feet away on the hood of one of the police cars. The Defendant became hostile and stated repeatedly that he didn't want officers to search his satchel. Knowing the Defendant had a history of violence and had been in prison, Officer Still tried to keep the Defendant at ease by telling him he was not going to search the satchel and said something to the effect that he was just putting it in a "safe" place, 12 to 15 feet away on the hood of the police car. Not needing the assistance of all of the police officers on the scene, Officer Stills told many of them that they could leave.

Officer Still then contacted his supervisor to confirm the plan-charge the Defendant with a misdemeanor offense and book him into jail. Once he was given approval by his supervisor, Officer Still searched the satchel and found a handgun with an empty chamber and a loaded magazine.[3]

---

[3] Presumably after learning that the Defendant had several felony convictions and was therefore a prohibited possessor, Officers decided he would face federal felony charges instead of a state misdemeanor offense.

**TPD Policy**[4]

When asked to justify the search of the satchel, Officer Stills referred to TPD policy that required officers to search both an arrestee and their belongings before transporting them in a police vehicle. Exhibit 1 is a TPD General Order relating to arrest policies. Section 2112.3 reads, in part, "Transporting officers shall search prisoners prior to placing them in the vehicle. Hand-carried prisoner property, such as purses, briefcases, knapsacks, etc. shall likewise be searched for weapons if it is to be transported in the police vehicle."

**Defendant's Motion**

In the present motion, Defendant argues that when officers searched his satchel without probable cause and without a warrant, they violated his Fourth Amendment right to be free from unlawful searches and seizures. Defendant argues that the search incident to arrest exception to the warrant requirement does not apply.[5] The Government justifies the search as incident to arrest but alternatively argues that the firearm would have inevitably been found during a lawful inventory search.

## II. Law

**Search Incident to Arrest**

Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *Weeks v. United States*, 232 U.S. 383, 392 (1914). This exception derives from

---

[4] Since the TPD Policy at issue was issued in May of 2001, before the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332, 335 (2009), this Court will not address the Policy as it relates to searches incident to arrest.

[5] The Complaint in this case states that officers found the weapon during a "search incident to arrest." Doc. 1.

interests in officer safety and evidence preservation that are typically implicated in arrest situations. *United States v. Robinson*, 414 U.S. 218, 230–234 (1973). A search incident to arrest may only include the arrestee's person and the area "within his immediate control," the area from within which a detainee might gain possession of a weapon or destructible evidence. *Chimel v. California*, 395 U.S. 752, 763 (1969).

If there is no possibility that an arrestee can reach into the area police seek to search, the justification for the search incident to arrest exception is absent and the rule does not apply. *Preston v. United States*, 376 U.S. 364, 367–368 (1964). In *Arizona v. Gant*, 556 U.S. 332, 335 (2009), the Court found that the search incident to arrest exception did not permit the search of a car after the driver was arrested, handcuffed, and locked in the back of a police car. *See also United States v. Myers*, 308 F.3d 251, 267 (3d Cir. 2002) (holding impermissible the search of bag incident to arrest where the detainee was handcuffed behind his back, was lying face down on floor, and was "covered" by two armed police officers).

Here, based on prior training and experience, officers knew that a satchel like the one the Defendant was wearing could be used to conceal a weapon. For officer safety, it was wise of them to remove the satchel and place it out of the Defendant's reach, here, 12 to 15 feet away from the Defendant on the hood of a police car. By Officer Still's own admission the satchel was placed in a "safe" location, meaning it was no longer within the Defendant's reach and therefore posed no threat of harm to the officers. This interpretation is bolstered by the fact that Officer Still dispatched many of the police officers who had arrived because they were not needed at the scene. Additionally, the Defendant was

handcuffed with his hands behind his back and was sitting precariously on an electric bicycle. He was surrounded with at least three presumably armed officers, two of whom were in police uniforms.

While a close call, this court finds that the search of the satchel is not justified as a search incident to a lawful arrest.

**Inevitable Discovery**

The inevitable discovery doctrine acts as an exception to the exclusionary rule and permits the admission of otherwise excluded evidence if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police. *United States v. Reilly*, 224 F.3d 986, 994 (9th Cir.2000). The government must make this showing by a preponderance of the evidence. *Id.* If "by following routine procedures, the police would inevitably have uncovered the evidence, then the evidence will not be suppressed despite any constitutional violation." *United States v. Young*, 573 F.3d 711, 721 (2009) (internal quotation marks and citation omitted).

Here, the court asks whether the Government has shown by a preponderance of the evidence that the firearm found in Defendant's satchel would have been uncovered by police officers through some permissible means.

**Inventory Search**

It is not "unreasonable for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Illinois v. Lafayette*, 462 U.S. 640, 648

(1983). A standardized inventory search process "not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person." *Id.* at 646. The justification for an inventory search does not rest on probable cause." *Id.* 643. Nor does the justification depend on whether an arrestee is headed to jail. *United States v. Sapalasan*, 97 F.4th 657, 659-60 (9th Cir. 2024). What matters is that the lawful separation of a defendant from his property created the government's lawful custody. *Id.*

Here, the TPD Officers had lawful custody of the Defendant's satchel. When they first approached him, the Defendant was wearing it across his chest. Based on their prior training and experience, officers knew it could be used to conceal a weapon. For officer safety, the officers had every right to remove the satchel and put it in a safe location, away from the Defendant's reach and control.

The CRT team had collectively decided that if the Defendant again violated the Arizona open container law, officers were going to arrest him, charge him with a misdemeanor and take him to jail. This very fact scenario occurred on April 3, 2024. Officers followed TPD policy which required that prior to transport, officers were required to search both an arrestee's person and their belongings for weapons. That is exactly what the officers did. While the court sees some evidence that the officers' search of the satchel was motivated by investigative interests—the possibility that the Defendant could help police find the fugitive they were looking for—there is no real indication that the inventory search of the satchel was a pretext for those investigative interests. *See United States v. Bowhay*, 992 F.2d 229, 231 (9th Cir. 1993). *See also United States v. Lillard*, 929 F.2d 500, 502 (9th Cir. 1991) ("In the context of arrests, where the officer testified that he knew the

defendant was suspected of manufacturing methamphetamine but 'would have stopped him anyway because of his speeding and careless driving,' we have held that the dual motive does not make the arrest pretextual.")

The Government has met its burden to prove that this was a permissible inventory search and that the weapon found in the Defendant's satchel would have inevitably been discovered notwithstanding the officers' invalid search incident to arrest.

## III. Recommendation for Disposition by the District Judge

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule Civil 72.1, Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **DENY** Defendant's Motion to Suppress Evidence Illegally Seized (Doc. 25).

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment in the case.

…

…

…

…

…

…

…

Pursuant to 28 U.S.C. § 636(b)(1)(B), the parties have fourteen (14) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections and responses to objections filed should be filed as **CR 24-02929-TUC-JGZ**. No replies shall be filed unless leave is granted from the District Court.

Dated this 16th day of September, 2024.

Honorable Jacqueline M. Rateau
United States Magistrate Judge